## TEAGUE et al. v. SMITH et al.

No. 10516—Opinion Filed Jan. 31, 1922.

(Syllabus.)

**1. Executors and Administrators — Decree of Distribution—Conclusiveness—Collateral Attack.**

A decree of distribution made by the county court in probate having jurisdiction of the settlement of an estate on a hearing as provided in sections 6463, 6464, and 6466 of Revised Laws, 1910, distributing to the heirs at law their respective shares of the estate of the deceased, is conclusive as to the rights of the parties interested in the estate unless reversed or modified on appeal, and such a decree is not subject to collateral attack.

**2. Same—Decree of Distribution—Presumptions.**

The rule that all presumptions must be indulged favorably to the regularity of proceedings leading to a judgment will be applied to a decree of distribution of an estate, and it will be presumed, in the absence of countervailing evidence, that such a decree is predicated upon sufficient and legal notice.

**3. Indians—Descent of Unrestricted Lands —State Law.**

All Indian lands from which restrictions have been removed, upon the death of the allottee, descend according to the laws of descent and distribution of the state of Oklahoma.

**4. Same — Repeal of Statutes — Effect of Statehood — Inheritance by Noncitizen Heirs.**

Sections 13 and 21 of the Enabling Act of June 16, 1906 (34 Stat. 267, c. 3335), admitting Oklahoma as a state into the Union, provided: "That the laws in force of the territory of Oklahoma as far as applicable shall extend over and apply to said state until changed by the Legislature," and "shall be in force throughout said state except as modified or changed by this act or the Constitution of Oklahoma;" and section 2 of the Schedule to the Constitution provides: "All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which are not repugnant to the Constitution and which are not locally inapplicable shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law." Held, under said provisions of the Enabling Act and the Constitution, chapter 49 of Mansfield Digest of the Laws of Arkansas and the provisos of section 6 of the Supplemental Creek Agreement of June 30, 1902, qualifying said chapter 49, were repealed, and the devolution of an estate of a deceased Creek allottee having died since the admission of Oklahoma into the Union is governed by the laws of descent

and distribution of the state of Oklahoma, and noncitizen heirs may inherit." Pigeon v. Stevens et al., 81 Okla. 180, 198 Pac. 309.

**5. Courts—Stare Decisis—Rule of Property.**

In an action in ejectment where the plaintiffs assert ownership to the lands as the heirs of a deceased person, who has been dead for more than seven years, and the evidence shows that the defendants in the action have been in the peaceful, uninterrupted possession of the lands since the death of the deceased owner, the doctrine of stare decisis is not applicable.

Pitchford, Kane, and Johnson, JJ., dissenting in part.

Error from Superior Court, Tulsa County; M. A. Breckinridge, Judge.

Action in ejectment by Lucinda A. Smith and others against Lizzie Teague and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

Horace Speed, for plaintiffs in error.

Davidson & Williams and G. C. Spillers, for defendants in error.

KENNAMER, J. This appeal is prosecuted by Lizzie Teague, Lillie Hill, sued in the trial court under the name of Lillie Vermillion, and others, as plaintiffs in error, to reverse the judgment of the superior court of Tulsa county decreeing Lucinda A. Smith, Daniel B. Smith, Stephen Smith, Emma Berryhill, Nina Snyder, Lillie D. Crenshaw, Willie A. Rothhammer, Joseph H. Rothhammer, Jr., Ernest Ralph Rothhammer, by his guardian, E. A. Rothhammer, and Daniel B. Smith, Jr., who appear here as defendants in error, to be the owners of and entitled to the immediate possession of the entire allotment of lands allotted by Frank Smith, a member of the Creek Tribe of Indians, located in Tulsa county.

Frank Smith, the allottee of the lands, was enrolled opposite roll No. 5877 as a one-thirty-second member of the Creek Tribe of Indians by blood. Under the act of Congress of May 27, 1908, ch. 199, 35 Stat. L. 312, the entire allotment of Frank Smith was unrestricted. The allottee of the lands in controversy, Frank Smith, died June 2, 1909, and at the date of his death was a resident of Oklahoma county, Okla. The deceased allottee, Frank Smith, died intestate, leaving surviving him his mother, Lizzie Teague, and his wife, Lillie Smith, now Hill, both noncitizens of the Creek Tribe of Indians, two of the plaintiffs in error in this cause, defendants in the action in

the trial court, who claim to be his only heirs at law. The deceased allottee left neither father, child, nor descendant of a child, sister, nor brother surviving him.

The defendants in error assert ownership and were decreed to be the owners of the land in controversy as the citizen Creek heirs of the deceased allottee. An administrator was appointed by the probate court of Oklahoma county over the estate of the deceased in June, 1909, and the estate was administered on and a decree of distribution was entered distributing the estate under the jurisdiction of said court. The decree of distribution was entered on January 10, 1912, distributing the lands in controversy in this action as part of the estate of Frank Smith, deceased, to Lillie Smith, his surviving widow, and Lizzie Teague, his mother, in equal shares, as the only surviving heirs at law of Frank Smith, deceased. It is conceded that if the Oklahoma Statutes of descent and distribution unqualifiedly govern the devolution of the estate of the deceased, the decree of distribution properly distributed the estate.

The record discloses that Lizzie Teague and Lillie Smith, now Hill, have been in the peaceful possession of the lands since the death of Frank Smith until the commencement of this action on June 26, 1917.

The trial court entered decree and judgment in favor of the plaintiffs in the action, defendants in error here, adhering to the former decision of this court wherein this court held, under the proviso of section 6 of the Creek Supplemental Treaty approved July 30, 1902 (32 Stat. L. 500, c. 1323), noncitizen heirs of the Creek Nation are excluded from inheriting lands allotted to members of the Creek Tribe of Indians.

The plaintiffs in error, other than Lizzie Teague and Lillie Smith, now Hill, are interested in this cause by reason of certain deeds and mortgages having been executed to them by Lizzie Teague and Lillie Smith, now Hill. The plaintiffs in error rely upon two grounds for reversal of the judgment of the trial court:

First. That the lands involved in this action being free from restrictions on alienation on the date of the death of the deceased allottee, Frank Smith, the decree of distribution entered by the probate court of Oklahoma county distributing the lands to Lizzie Teague and Lillie Smith, now Hill, as the heirs at law of the deceased, Frank Smith, is res adjudicata of the issues involved in this action; said decree having be-

come final in that the same was never appealed from, reversed, or vacated.

Second. That the Oklahoma law of descent and distribution governs the devolution of the estate of the deceased.

The defendants in error contend that the devolution of the estate of the deceased allottee is governed by the Oklahoma law of descent and distribution as qualified by the proviso of section 6 of the Creek Supplemental Treaty approved July 30, 1902, which excludes noncitizen heirs from inheriting. That the decree of distribution entered by the probate court of Oklahoma county is void for the reason no notice of the petition for distribution was given as required by the statutes of Oklahoma. That the law as announced in the case of In re Pigeon's Estate (Pigeon v. Stevens et al.) 81 Okla. 180, 198 Pac. 309, should not be controlling in this cause, for the reason that a rule of property had been established by the prior decisions of this court to the decision rendered in the Pigeon Case.

Section 1, act of Congress of May 27, 1908 (c. 199, 35 Stat. 312), provides:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. * * *"

Section 4 of said act provides:

"That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided, That allotted lands shall not be subjected or held liable, to any form of personal claim or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

It is obvious, under section 1 of said act, supra, that the lands in question, being the allotment of a member of the Creek Tribe of Indians enrolled as a one-thirty-second Indian by blood, are unrestricted lands; that under section 4 of said act, supra, said lands are subject to the laws of the state of Oklahoma, the same being free from restric-

tions. This court, in the case of Pigeon v. Stevens et al., 81 Okla. 180, 198 Pac. 312, said:

"Upon the admission of the state of Oklahoma into the Union the same came into the Union with all the powers and sovereignty of any other state, and upon the removal of restrictions against alienation and the granting of full citizenship to Indians the federal government ceased to have any further power or control over the tribal citizens with respect to unrestricted lands, and all laws passed by Congress prior to statehood, either general or special, ceased with the admission of Oklahoma as a state to have force or effect in so far as unrestricted lands of tribal citizens are concerned, and the Supreme Court of the United States has forever settled the question that Indian lands within a state or territory that has a local form of government are subject to the laws of the state or territory."

"The Supreme Court of the United States, in the case of John Schrimpscher et al. v. John S. Stockton et al., 183 U. S. 290, 22 Sup. Ct. 107, 46 L. Ed. 203, was reviewing a judgment of the Supreme Court of Kansas. The Supreme Court of Kansas held that the state statute of limitation applied to the allotment of a Wyandotte Indian and commenced to run against the heirs of a deceased allottee from the date of the treaty which terminated the restrictions on said lands or the disability of the heirs to alienate the same, and the court, in affirming the judgment of the Supreme Court of Kansas, speaking through Mr. Justice Brown, said:

"'Their disability terminated with the ratification of the treaty of 1868. The heirs might then have executed a valid deed of the land, and possessing, as they did, an unincumbered title in fee simple, they were chargeable with the same diligence in beginning an action for their recovery as other persons having title to lands; in other words, they were bound to assert their claims within the period limited by law'."

Other authorities cited in the opinion of the court in the Pigeon Case, supra, in support of this rule are: Goudy v. Meath, 203 U. S. 146, 51 L. Ed. 130; Dickson v. Luckland Company, 242 U. S. 371, 61 L. Ed. 371; United States v. Waller, 243 U. S. 463, 61 L. Ed. 843; Taylor v. Parker, 235 U. S. 42, 59 L. Ed. 121; Moore v. Nahconbe et al., 72 Kan. 169, 83 Pac. 400, 4 L. R. A. (N. S.) 477.

It is plain that, the lands in controversy being free from restrictions, the probate court of Oklahoma county had jurisdiction of the settlement of the estate of Frank Smith, deceased. Therefore, if proper

notice was given on the hearing for the distribution of said estate, the decree of the probate court distributing the estate is conclusive and binding until set aside, reversed, or vacated in a proper proceeding. Section 6463, Revised Laws 1910, provides:

"Upon the final settlement of the accounts of the executor or adminstrator, or at any subsequent time, upon the application of the executor or administrator, or of any heir, legatee or devisee, the court must proceed to distribute the residue of the estate in the hands of the executor or administrator." \* \* \*

Section 6464 provides:

"In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled; and such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal."

Section 6466 is as follows:

"The order or decree may be made on the petition of the executor or administrator, or any person interested in the estate. Notice of the application must be given by posting or publication, as the court may direct, and for such time as may be ordered. If partition be applied for, as provided in this article, the decree of distribution shall not divest the court of jurisdiction to order partition, unless the estate is finally closed."

The only objection made to the distribution of the estate in the instant case is that the same is void for the reason no notice was given. The decree, as disclosed by the record, is in part as follows:

"It appearing to the court that all debts existing against said decedent have been fully paid and satisfied, and that said estate has been fully administered, as by the final account of said Lillie Smith, administratrix of said estate, duly audited and allowed by this court, pursuant to notice given and served, will appear, reference being had thereto, and that said estate is ready for distribution."

It is clear under the sections of the statute, supra, that the decree of distribution may be made on the application of the administrator or executor, and, no evidence being introduced other than the decree, the presumption is that the court had jurisdiction and proceeded as the law directs in entering the decree of distribution. 24 C. J. p. 531.

The Supreme Court of California, in the case of French v. Phelps, 128 Pac. 772, held:

"The rule that all presumptions must be indulged favorably to the regularity of the proceedings leading to a judgment will be applied to a decree of distribution of an estate, and it will be presumed that the evidence on which such a decree is predicated is sufficient and competent, and that any legal objections that could have been made against it were made by the party objecting to the decree."

The Supreme Court of Washington, in the case of Davis v. Seavey, 163 Pac. 35, held:

"After final distribution it must be presumed that the decree therefor was duly rendered, and such decree becomes final against one suing the executrix for accounting, claiming under an alleged unprobated codicil devising plaintiff money, unless facts alleged disclose fraud of the executrix in procuring the decree."

From a reading of the decree it would appear that the administratrix filed her final report for approval and a distribution of the estate, and in the absence of any pleading or evidence to the contrary this court will indulge the presumption that proper notice was given upon hearing of the final report and application for decree of distribution. Under section 6464 of the statute, supra, the decree of distribution is conclusive as to the rights of heirs, legatees, or devisees, until reversed, set aside, or modified on appeal. The authorities, under similar statutes, uniformly hold that such a decree or judgment cannot be collaterally attacked. Smith v. Westerfield, 88 Cal. 374, 26 Pac. 206; Keith v. Guthrie (Kan.) 52 Pac. 435; Gaines v. Fuentes et al., 92 U. S. 26, 23 L. Ed. 524.

In the case of Goodrich v. Ferris, 214 U. S. 71, 53 L. Ed. 914, a decree of distribution made by the court in California having probate jurisdiction was attacked seven years after the decree of distribution, upon the ground that ten days' notice of the hearing for the decree of distribution was violative of the federal Constitution guaranteeing due process of law. In an opinion by Mr. Justice White, the court said:

"It is elementary that probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of a proceeding in rem. and is therefore one as to which all the world is charged with notice. And that the

law of California conforms to this general and elementary rule is beyond question."

We are of the opinion that, in the absence of countervailing evidence, the presumption is that the court proceeded in a regular manner to distribute the estate, and that the decree of distribution is conclusive upon all parties interested in the estate. In the case at bar, although it be conceded that the decree of distribution is not conclusive upon the parties, under the rule announced in Pigeon v. Stevens et al., supra, the mother and wife of the deceased allottee are entitled to inherit the lands in controversy.

Counsel for the defendants in error do not complain of the rule announced in the Pigeon Case, supra, but insist that the rule should not be applied where the death of the allottee occurred prior to the decision rendered in the Pigeon Case, supra, for the reason a rule of property had been established by the prior decisions of this court announcing the rule that since the admission of Oklahoma into the Union as a state the Oklahoma laws of descent and distribution are applicable only to the devolution of the estates of deceased Creek allottees as qualified by the proviso of section 6 of the Supplemental Creek Treaty approved July 30, 1902 (32 Stat. L. 500, c. 1323), which excluded noncitizen Creek heirs from inheriting lands allotted to members of the Creek Tribe of Indians. This rule was first announced in the case of Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602, February 8, 1916. The rule as announced in Thompson v. Cornelius was overruled in an opinion by this court April 5, 1921, in Pigeon v. Stevens, supra. Oklahoma was admitted into the Union November 16, 1907. For over eight years, covering the period from the admission of Oklahoma into the Union as a state to the rendition of the decision in Thompson v. Cornelius, supra, it was the general opinion of the bar that the Oklahoma law of descent and distribution was unqualifiedly in force throughout the state of Oklahoma, and subsequent to the decision in Thompson v. Cornelius in most all transactions wherein lands allotted to members of the Creek Tribe of Indians were conveyed the purchasers secured deeds from the noncitizen heirs, it being apparent to most every interested party that the question would never be finally determined until passed upon by the Supreme Court of the United States, the court of last resort having jurisdiction to adjudicate the question.

A rule of property is an equitable rule under which honest investments have been made upon the assumption that a court of last resort has established their title, and should be invoked only to protect such investments. Under the facts, as disclosed in the record in the case at bar, Lizzie Teague, the mother of the deceased allottee, and Lillie Smith, now Hill, his surviving wife, have been in the uninterrupted possession of the lands in controversy for more than seven years. They made valuable and lasting improvements upon the lands, and during all of this time the defendants in error, the more distant relatives of the deceased, made no objections to the asserted ownership and possession of the mother and wife of the deceased. They in no way contend that they acquired title to the lands by purchase, relying upon the decision of any court, but merely assert that they are entitled to inherit the lands. It needs no citations of authorities to sustain the rule that no one can have a vested interest to inherit the lands of decedent. The Legislature may change the law of descent and distribution at will. The doctrine of stare decisis has no application in this cause.

The judgment of the trial court is reversed, and the cause remanded to the superior court of Tulsa county, with directions to enter a decree in favor of the defendants in the action, plaintiffs in error here.

HARRISON, C. J., and MILLER, ELTING, and NICHOLSON, JJ., concur. PITCHFORD, V. C. J., and KANE and JOHNSON, JJ., concur as to the law announced in the first and second paragraphs of the syllabus, but dissent as to the law announced in the third, fourth, and fifth paragraphs of the syllabus.