In the Matter of the Estate of Elmer THURBER, Deceased.

Sharon ASBILL, Mother and Next Friend of Regina Marie Asbill, a Minor, Appellant,

v.

Anna THURBER, Appellee.

No. 53003.

Court of Appeals of Oklahoma, Division No. 2.

Dec. 4, 1979.

Released for Publication by Order of Court of Appeals Jan. 3, 1980.

David Harris, Stilwell, for appellant.

Lloyd E. Cole, Jr., Stilwell, for appellee.

BRIGHTMIRE, Judge.

The ultimate consequence of a traditional New Year's kiss could hardly have been foreseen by 15-year-old Sharon Asbill and her 16-year-old boyfriend Larry Thurber. But apparently the tender press kindled the throb of nature's urgings which, unrestrained, escalated to the supreme ecstasy. Ten months later, on October 7, 1969, the teenager gave birth to a girl baby. Paternity proceedings against Larry resulted in an agreed judgment holding him responsible for part of the expenses connected with the birth. Then Larry died and so did his father, Elmer Thurber. The elder Thurber's estate—ten acres of land—was probated and distributed to his widow, three children and two grandchildren without reference to the ‘Asbill ‘child, Regina. During the pendency of a later partition suit Regina filed a "Motion to Modify Judgment and Election . To Take" the ten acres at the appraised value on the ground she was the daughter of the late Larry Thurber and therefore a granddaughter of the deceased Elmer Thurber.

On November 13, 1978 the trial court overruled the motion after finding that Regina had failed to establish she was begotten by Larry Thurber. The youngster appeals contending that the decision was, as a matter of law and fact, reversibly erroneous. We think she is right.

## I

 The ten-year-old Regina's belated collateral attack on the decree of distribution and the partition order—based as they are on statutory constructive notice only—is authorized by 12 O.S.1973, § 700.[1] Ordinarily the entrance of such a decree after appropriate statutory notice operates as a conclusive establishment of heirship save for fraud or collusion in its procurement. But by virtue of § 700 such a decree is not binding on a minor heir. *Oberlander v. Eddington,* Okl., 391 P.2d 889 (1964); *National Exploration Co. v. Robins,* 140 Okl. 260, 283 P. 236 (1929). And so this takes us, then, directly to the core question of whether or not the record made in the earlier paternity proceedings was sufficient to establish that Larry was a procreator of Regina. We hold it was.

---

1. Section 700 reads:

"It shall not be necessary to reserve in a judgment or order the right of a minor to show cause against him after his attaining full age; but in any case in which, but for this section, such reservation would have been proper, the minor, within one (1) year after arriving at the age of eighteen (18) years, may show cause against such order or judgment."

## II

Elmer Thurber died in March 1978 and a decree determining heirs and distributing his estate was entered July 27 that same year. By this time the old statute governing the inheritance rights of extramarital offspring had been purged of its discriminatory character—ordaining a substantial mother-father inheritance difference[2]—by giving a singles' child the same right as a nuptial child to inherit from the natural father "and his kindred" so long as fatherhood was established one of four ways: (a) by the purported father's written acknowledgment in the presence of a witness; (b) by a later marriage of the mother to one acknowledging himself to be the father; (c) by the man's public acknowledgment of parentage accompanied by his receiving the child into and treating it as a member of his family, or (d) by a judicial determination of the fact in a paternity proceeding.

With this in mind we turn to the facts relied on by Regina to establish the parentage of Larry Thurber.

## III

In April 1969, when it became apparent young Sharon was pregnant her father asked the authorities to institute an action against Larry Thurber naming him the father of the unborn child and requiring him to pay the expenses incident to the birth of the child and thereafter support it.

█ Larry hired a lawyer who filed an answer denying generally all of Oklahoma's parental allegations. Regina was born October 7, 1969. At a pretrial conference held on March 18, 1970 Larry's lawyers requested time to obtain blood tests. The court not only gave it to them but ordered the mother of Regina to "immediately cause to be taken a blood test upon said minor child by a licensed physician" and "that the results of such blood test shall be filed as a matter of record in the . . . case and a copy of the results . . . be mailed to" Larry's attorney. The record does not disclose whether the blood was ever analyzed. It does show, however, that in April 1970 the parties signed a settlement agreement in the presence of witnesses which recited that Sharon Asbill and Larry Thurber acknowledged having sexual relations about January 1, 1969 when Sharon "did come to be with child," and that though Larry continued to deny being its father he "does now acknowledge these acts and does further desire to settle his financial responsibility to Sharon Asbill and her minor child." Accordingly he agreed to pay $600 toward the maternity and other child-related expenses.

In his paternity decree the court approved the stipulation and found that Larry Thurber became the father of Regina as a result of having had sexual intercourse with her mother on or about January 1, 1969 and "accordingly [is] responsible for contribution toward [her] support . . . ."

Although both the agreement and the decree could have been drawn with a trifle more definiteness, we have little difficulty deducing from both documents that (a) Larry Thurber proclaimed parentage of Regina in writing before competent witnesses and (b) the district court of Adair County judicially determined that Larry was Regina's father in the earlier paternity proceeding—two statutory bases for establishing the paternal heirship.

## IV

The trial court's order of November 13, 1978 overruling Regina's motion to modify is reversed and the cause is remanded with directions to modify both the decree of distribution and the partition action judgment to the extent of including Regina as an heir at law of Elmer Thurber and to otherwise protect her legal rights.

BACON, P. J., concurs in result and NEPTUNE, J., concurs.

2. 84 O.S.1971 § 215 formerly specified that a child born out of wedlock could inherit from its mother and "her kindred" but only from the father alone. This statute was amended in 1977 to, among other things, allow the child to inherit from the father's "kindred" also.